UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE LYNN GRISMORE, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company,<br><br>　　　　Defendant. | Case No. 5:21-cv-01914-JWH-SHK<br><br>**ORDER REGARDING SUMMARY JUDGMENT [ECF No. 44]** |

This case presents two discrete questions under California law pertaining to automobiles. When a person leases a dealership-owned loaner vehicle, does that car qualify as a new vehicle for the consumer-protection purposes of California's Song-Beverly Act? If not, does that car nevertheless qualify as an "other motor vehicle sold with a manufacturer's new car warranty"? For the reasons explained below, the Court concludes that the answer to both questions is "no," and, therefore, it enters judgment against the lessor and in favor of the defendant automobile manufacturer.

## I. BACKGROUND

Before the Court is the motion of Defendant Mercedes-Benz USA, LLC ("MBUSA") for summary judgment.[1] The Court finds this matter appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support and in opposition,[2] the Court orders that the Motion is **GRANTED**, for the reasons set forth herein.

### A. Undisputed Facts

In January 2021, Plaintiff Renee Lynn Grismore leased a used 2021 Mercedes-Benz GLA250W (the "Subject Vehicle") from non-party Mercedes-Benz of Ontario ("MBO"), an MBUSA-affiliated dealership.[3] The Subject Vehicle was previously a service loaner or service vehicle of MBO, and its odometer showed 5,613 miles of use at the time that Grismore entered into the lease.[4] Although MBO had used the Subject Vehicle as a service loaner,

---

[1] Def.'s Mot. for Summ. J. (the "Motion") [ECF No. 44].
[2] The Court considered the documents of record in this action, including the following papers: (1) First Am. Compl. (the "Amended Complaint") [ECF No. 23]; (2) Motion (including its attachments); (3) Pl.'s Opp'n to the Motion (the "Opposition") [ECF No. 48]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 50].
[3] Joint Statement of Undisputed Facts and Genuine Disputes in Supp. of Def.'s Mot. for Summ. J. (the "Joint Statement") [ECF No. 44-2] ¶ 2.
[4] *Id.* at ¶ 5.

Grismore was the first private consumer to lease the Subject Vehicle.[5] The parties dispute whether the Subject Vehicle was covered by a new vehicle warranty, but, as explained below, there is no genuine dispute of material fact that Grismore's lease of the Subject Vehicle did not include a new or full warranty issued by MBUSA.

In July 2021, Grismore presented the Subject Vehicle to MBO to address certain mechanical problems.[6] MBO's inspection of the vehicle found leaks within the car's exhaust vales and fouled spark plugs. Additional issues involved its powertrain and A/C system. Grismore presented the Subject Vehicle to MBO again in October 2021, for the same powertrain-related issues, but MBO's technician concluded that it was operating according to its warranty.[7] Grismore claims that the Subject Vehicle's problems persisted throughout her lease, despite her reasonable attempts to allow MBO to fix it.

**B.     Procedural History**

Grismore filed the instant action in November 2021, and she amended her Complaint in April 2022. Grismore asserts two claims of relief, for breach of express and implied warranty under California's Song-Beverly Act (the "SBA").[8] MBUSA filed this Motion for summary judgment in September 2022, and the matter is fully briefed.[9]

---

[5]     *Id.* at ¶ 14.
[6]     Amended Complaint ¶ 9.
[7]     *Id.* at ¶ 10.
[8]     *See id.*
[9]     MBUSA additionally filed an unopposed Request for Judicial Notice (the "Request") [ECF No. 45] regarding orders in two cases: (1) *Fish v. Tesla, Inc.*, 2022 WL 1552137 (C.D. Cal. May 12, 2022); and (2) *Neyra v. Mercedes-Benz USA, LLC*, 2022 WL 19432589 (C.D. Cal. May 24, 2022). "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(c). In the Ninth Circuit, "court filings and other matters of public record" are sources whose accuracy cannot reasonably be questioned for the purposes of Rule 201. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). "The court

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).  The substantive law determines the facts that are material.  *See id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  Factual disputes that are "irrelevant or unnecessary" are not counted.  *Id.*  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Under this standard, the moving party has the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings and the record that it believes demonstrate the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  *See id.* at 325.  Instead, the moving party need only prove that there is an absence of evidence to support the nonmoving party's case.  *See id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The party

---

. . . must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  Accordingly, MBUSA's Request is **GRANTED**.

seeking summary judgment must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250.

If the moving party sustains its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. *See Celotex*, 477 U.S. at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). The non-moving party must make this showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252.

Furthermore, a party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes, 2010 Amendment, to Fed. R. Civ. P. 56. Reports and declarations in support of an opposition to summary judgment may be considered only if they comply with Rule 56(c), which requires that they "be made on personal knowledge, set forth facts that would be admissible evidence, and show affirmatively that the declarant is competent to testify to the matters stated therein." *Nadler v. Nature's Way Prod., LLC*, 2015 WL 12791504, at *1 (C.D. Cal. Jan. 30, 2015); *see also Loomis v. Cornish*, 836 F.3d 991, 996–97 (9th Cir. 2016) (noting that hearsay statements do not enter into the analysis on summary judgment).

-5-

### III. ANALYSIS

**A.** ***Rodriguez*** **and California Law**

Before examining what type of warranty applies to the Subject Vehicle, Grismore raises a threshold issue: is *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209 (2022), controlling authority in this case? The doctrinal answer is "yes," because "federal courts exercising diversity jurisdiction must follow state substantive law . . . when adjudicating state law claims." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Grismore contends that *Rodriguez* was wrongly decided, though, and that at best it is "persuasive authority" that conflicts with Grismore's preferred state law authority—*Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112 (1995), *as modified on denial of reh'g* (June 22, 1995).[10]

Although Grismore invites the Court to "choose a side between the conflict,"[11] there is no need for the Court to resolve any potential splits between California appellate courts. Although *Rodriguez* and *Jensen* reached different conclusions when evaluating whether vehicle warranties were covered by the SBA, the court in *Rodriguez* acknowledged that "*Jensen* was correctly decided" and that the facts in *Rodriguez* distinguished it from *Jensen*. *See Rodriguez*, 77 Cal. App. 5th at 223-24. Further, although the California Supreme Court granted review in *Rodriguez*, the court explicitly stated that *Rodriguez* may be cited while its decision is pending. *See Rodriguez v. FCA US*, 512 P.3d 654 (Cal. 2022).

Finally, several courts within this District have cited *Rodriguez* with approval. *See Pineda v. Nissan N. Am., Inc.*, 2022 WL 2920416, at *3 (C.D. Cal.

---

[10] Opposition 1:21-28.

[11] *Id.* at 2:1-2.

July 25, 2022) (discussing *Rodriguez* distinguishing *Jensen* on whether a vehicle was considered a "new motor vehicle" for purposes of the SBA); *Fish*, 2022 WL 1552137, at *10 (citing *Rodriguez* for the contention that "several California courts have called *Jensen* into question—or at least distinguished it—in part because its facts do not readily align with its broad holding"); *Neyra*, 2022 WL 19432589, at *2 (citing *Rodriguez* when discussing a plaintiff's standing under the SBA).  Although the California Supreme Court may decide differently upon its review of *Rodriguez*, until then, the case is proper authority under California law for federal courts analyzing the SBA.

**B.     Application of *Rodriguez* to the Instant Motion**

Grismore asserts her claims under the SBA, which "protect[s] consumers who have purchased products covered by an express warranty." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006).  Under an express warranty, a manufacturer is required either to replace a "new motor vehicle" or to make restitution to the purchaser if, "after a reasonable number of attempts," the manufacturer is unable to repair the vehicle. Cal. Civ. Code § 1793.2(d)(2).  Liability for breach of an implied warranty "*lies with distributors and retailers*, not the manufacturer, unless the manufacturer issues a new warranty along with the sale of the used good." *Dorantes*, 2023 WL 3150105, at *2 (emphasis in original; internal quotation omitted).

The core dispute in this action is whether the Subject Vehicle is considered a "new motor vehicle" or is an "other motor vehicle sold with a manufacturer's new car warrant." Cal. Civ. Code § 1793.22(e)(2).  A "new motor vehicle" under the SBA may include demonstrators and other dealer-owned vehicles that "are *used* in the sense that they will have been driven for various purposes before sale." *Rodriguez*, 77 Cal. App. 5th at 220.  Although those types of vehicles are not technically "new," "manufacturers (or their dealer-representatives) treat them as such upon sale by providing the same type

of manufacturer's warranty that accompany new cars." *Id.* The *Rodriguez* court concluded that the "natural interpretation of the phrase 'other motor vehicle sold with a manufacturer's new car warranty'" is limited to "vehicles that have never been previously sold to a consumer and come with full express warranties." *Id.*

The *Rodriguez* court emphasized that "nothing about the wording or structure of the [SBA] indicates the Legislature intended to expand the definition of 'new motor vehicle' to include used vehicles sold with some part of the manufacturer's warranty still in force." *Id.* at 221. Instead, "other motor vehicle sold with a manufacturer's new car warranty" is a catchall provision meant to "cover a narrow class vehicle—the previously driven, but basically new (*i.e.*, not previously sold) car." *Id.* at 220. The *Rodriguez* court specifically stated that "the phrase would cover a car used by the manufacturer or dealer for *any purpose* (say, a service loaner), so long as the car was sold *as if* it were new— that is, with a full new car warranty." *Id.* at 221 (emphasis in original).

### C. Subject Vehicle and New Car Warranty

Explicit in *Rodriguez's* holding is that Grismore must have obtained a "full new car warranty" in order for MBUSA to be liable under the SBA. Although Grismore asserts that a genuine dispute of material fact exists regarding that matter—and, therefore, that summary judgment is inappropriate—a closer examination of the evidence shows that the Subject Vehicle was sold as used, without a full new car warranty.

Grismore leased the Subject Vehicle as used from MBO, and MBUSA— the original manufacturer and distributor of the vehicle when it was new—was not implicated in Grismore's lease, nor did MBUSA provide a new warranty for the Subject Vehicle.[12] As part of the evidence in support of its Motion, MBUSA

---

[12] Motion 9:4-10.

provides a copy of Grismore's lease with MBO, which indicates that the Subject Vehicle was "pre-owned"[13] and that it was not covered by a new or pre-owned warranty.[14] That portion of the contract—which Grismore signed—states that "[i]f the vehicle is pre-owned, it is not covered by a warranty unless indicated by a check in the corresponding block below."[15] None of the following three boxes was checked on the lease: (1) "Remainder of a standard new vehicle warranty from manufacturer; (2) Pre-owned vehicle warranty from manufacturer; or (3) Pre-owned warranty from third-party provider."[16] In MBO's "Used Vehicle Disclosure" form, the Subject Vehicle was listed as a "Dealer Service Vehicle" and as a "Dealer Loaner Vehicle."[17] Reading the above contract provisions together leads to the conclusion that the Subject Vehicle was a used service loaner that was not covered by an MBUSA warranty. *See Gilkyson v. Disney Enterprises, Inc.*, 66 Cal. App. 5th 900, 916 (2021) ("When the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement."); *see also Dorantes*, 2023 WL 3150105, at *1 (finding that because the contract did not include check marks on any of the warranty boxes for pre-owned vehicles, "the lease agreement would suggest that the Subject Vehicle had no warranty if it were sold as a pre-owned vehicle").

In response, Grismore avers that she was the first private owner of the Subject Vehicle.[18] That circumstance by itself does not create any genuine dispute of fact, though, because both parties agree that the Subject Vehicle was previously a service loaner owned by MBO. Next, Grismore contends that

---

[13] Joint Exhibit [ECF No. 44-3] 10.
[14] *Id.* at 12, ¶ 15.
[15] *Id.*
[16] *Id.*
[17] *Id.* at 47.
[18] Opposition 7:19-26; Joint Statement ¶ 15.

MBO stated that the Subject Vehicle would be accompanied by a new and full MBUSA warranty.[19] Grismore cites several pieces of evidence in support of that contention, but, as detailed below, none of the supporting evidence is admissible, nor does it create a genuine dispute of material fact.

First, Grismore offers the declaration of counsel Kevin Jacobson.[20] Although Jacobson's declaration details the evidence marshalled in support of Grismore's Opposition, the declaration by itself does not save the day for Grismore. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015) ("The district court can disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence."). Grismore claims that she "understood that the Subject Vehicle . . . was being leased to her . . . with new and full express warranties," but she does not provide admissible evidence in support.[21]

Grismore then dives into the Subject Vehicle's ownership history, but, again, none of the evidence cited in the Opposition disputes that the Subject Vehicle was not covered by an MBUSA warranty. Grismore argues that "the in/service warranty commencement date is determined by the retail sale to an original private consumer, not the manufacturers [*sic*] or distributors' date of sale to the authorized retailer."[22] In support, Grismore cites "*Rodriguez*, *supra*, at 22,"[23] but no such pin cite exists in that case. Instead, it appears that the support that Grismore intends to invoke stems from Cal. Civ. Code § 1791.2(a)(1), which provides that "[e]xpress warranty" means: "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to

---

[19] Joint Statement ¶ 19.
[20] Joint Exhibit 78-86.
[21] Opposition 8:4-7.
[22] *Id.* at 8:23-25.
[23] *Id.* at 8:25-26.

which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Grismore's confused and misstated argument cannot prevail because she does not provide evidence that an express warranty ever existed between her and MBUSA.

Further, Grismore's supporting evidence in the Joint Statement does not create a genuine dispute of material fact. Joint Statement ¶ 19 alleges that the Subject Vehicle had a "new and full MBUSA warranty," but the evidence that Grismore cites does not support that fact. The dealer license plates state that the vehicle was used and that it was "first sold as a new vehicle" on January 3, 2021, but they make no mention of a warranty from either MBUSA or MBO.[24] Similarly, the "Used Vehicle Disclosure" does not mention a warranty for the Subject Vehicle, only that it was a dealer service or loaner vehicle.[25]

Grismore next refers to the Carfax vehicle history report, but that report explicitly states under "Basic Warranty" that there was "[n]o data reported to CARFAX."[26] Grismore alleges the Carfax report creates a dispute regarding the Subject Vehicle's ownership history,[27] but that ownership history is not relevant to the question of whether Grismore's used service loaner was covered by a new car warranty. Less forgivably, Grismore *misstates* a central holding of *Rodriguez*; Grismore claims that the *Rodriguez* court interpreted the "basically new" provision of the SBA as including "service loaners" as new motor vehicles.[28] That is not so. The *Rodriguez* court stated that "the phrase [new motor vehicle] would cover a car used by the manufacturer or dealer for *any*

---

[24] Joint Exhibit 3-4.
[25] *Id*. at 47-48.
[26] *Id*. at 44.
[27] Opposition 10:4-15.
[28] *Id*. at 10:11-15.

-11-

*purpose* (say, a service loaner), so long as the car was sold *as if* it were new—that is, with a full new car warranty." *Rodriguez*, 77 Cal. App. 5th at 221 (emphasis in original).  The Carfax report does not mention ***any*** warranty for the Subject Vehicle, let alone a full new car warranty.

   Later in the Joint Statement, Grismore cites a different Carfax report. That version states that the original warranty was "estimated to have 27 months or 26,297 miles remaining."[29]  As an initial observation, as a matter of logic, if the Subject Vehicle had only a remainder of its initial manufacturer warranty after its first acquisition by MBO, then the Subject Vehicle did not have a new or full warranty.  Furthermore, under *Rodriguez*, Grismore is unable to recover against the original manufacturer under the SBA for a used vehicle with only a remainder of its original warranty.  *See id.* at 225 ("[W]e conclude the phrase 'other motor vehicles sold with a manufacturer's new car warranty' refers to cars sold with a full warranty, not to previously sold cars accompanied by some balance of the original warranty.").  Consequently, the later Carfax report undercuts Grismore's arguments that she may recover against MBUSA through the SBA.

   Next, Grismore highlights her "Mercedes-Benz Premier Prepaid Maintenance Application for Coverage."[30]  It is unclear how that document establishes a dispute of fact concerning the Subject Vehicle's warranty, and Grismore never attempts to explain it in her Opposition.  Further, the second page of the application was unsigned, bringing into question whether the document was valid or ever accepted by MBUSA or MBO.  Moreover, the application was for an optional prepaid maintenance program, not a new or full warranty for the Subject Vehicle, and it was "sold in addition to or in lieu of

---

[29] Joint Exhibit 69.
[30] *Id.* at 26-27.

-12-

express warranties." *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1256-57 (2004), *as modified* (June 23, 2004). The *Gavaldon* court also held that under the SBA, "the Legislature thought of service contracts and express warranties as mutually exclusive categories, except when the manufacturer chooses to use the terms 'warrant' or 'guarantee' in a service contract." *Id.* at 1259. Those words are missing from Grismore's application, and, accordingly, that evidence does not support the existence of a factual dispute concerning the Subject Vehicle's warranty.

Grismore then claims that the Subject Vehicle's Vehicle Master Inquiry ("VMI") further demonstrates a factual dispute, although she provides no context in her Opposition. Although the Court will not speculate regarding how that document may support Grismore's claims, the VMI shows that the warranty start date was August 11, 2020, which corresponds with MBO's acquisition of the Subject Vehicle from MBUSA, and not Grismore's lease in January 2021.[31] That fact further undermines Grismore's theory that the Subject Vehicle was accompanied by a new or full warranty upon its lease to Grismore. Grismore similarly cites the "MBO Statement of Information and Occupational License" in Joint Statement ¶ 19, but she provides no context to establish how it supports the Opposition.[32]

Finally, the last piece of evidence that Grismore presents in support of her opposition is her own declaration.[33] Grismore testifies that MBO represented to her that she would receive "a new and full MBUSA warranty" for the Subject Vehicle, but, as detailed above, none of the evidence set forth in the Joint Statement supports that asserting.[34] The validity of MBO's statement is

---

[31]   *Id.* at 58.
[32]   *Id.* at 73-74.
[33]   *Id.* at 75-77.
[34]   *Id.* at 76-77, ¶ 6.

irrelevant to summary judgment, because a non-party's representations to Grismore do not bind MBUSA nor create a warranty where none previously existed.[35] *See Nigro*, 784 F.3d at 497. Although "the beneficiary of a transferrable express warranty can sue a manufacturer for breach of an express warranty to repair defects under the California Uniform Commercial Code, *Rodriguez*, 77 Cal. App. 5th at 225, Grismore cannot recover against MBUSA under the SBA.

**D.  Plaintiff's Request for Additional Discovery**

In her Opposition, Grismore requests 120 days to procure relevant facts through discovery concerning the Subject Vehicle's warranty status.[36] "Rule 56(f) permits a court to deny or continue a motion for summary judgment if the opposing party demonstrates through affidavit that she cannot present facts essential to her opposition and further discovery is necessary to allow the opposing party to obtain the necessary information." *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1119 (W.D. Wash. 2004), *aff'd*, 152 F. App'x 565 (9th Cir. 2005). The opposing party bears the burden of showing that the additional evidence sought exists and that it would prevent summary judgment. *See Chance v. Pac–Tel Teletrac, Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). "The mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under Rule 56(f)." *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades District Council,* 817 F.2d 1391, 1395 (9th Cir. 1987).

Granting a Rule 56(f) request is particularly inappropriate when the party has failed to pursue discovery diligently throughout the course of the litigation. *See Chance,* 242 F.3d at 1161 n.6. Moreover, it is not an abuse of discretion to rule on a summary judgment motion even if there are outstanding discovery

---

[35]  Reply 6:12-21.
[36]  Opposition 21:26-22:2.

-14-

disputes when the party opposing summary judgment has not properly moved for a Rule 56(f) continuance. *See id.* at 1161 (the opposing party relied on Rule 56(f) to argue against summary judgment in its opposition brief but did not move for a Rule 56(f) continuance).

After MBUSA filed the instant Motion, Grismore did not seek to submit any supplemental briefing nor provide any notice to this Court concerning facts produced during discovery or any other new information that may be relevant to summary judgment. Based upon the record before the Court, it appears unlikely that Grismore will be able to show that a new or full warranty from MBUSA accompanied her lease of the Subject Vehicle. Accordingly, Grismore's request for additional discovery is **DENIED**.

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. MBUSA's request for judicial notice is **GRANTED**.
2. MBUSA's Motion for summary judgment is **GRANTED**.
3. Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated: January 8, 2024

John W. Holcomb
UNITED STATES DISTRICT JUDGE